JOHN HOYE *vs.* EDWARD JOHNSTON.—*December,* 1844.

A *second* patent for the same land will not be granted, according to the rules of the land office, until the *first* be vacated.

*H.*, on the 5th September 1839, obtained a warrant of re-survey, to affect contiguous vacancy in *Allegany* county. On the 19th May, he made a survey; on the 31st July, returned his certificate into the land office, and on the 18th February 1841, paid the composition money. On the 29th June 1840, *J.* obtained a special warrant; on the 11th July, executed his survey; on the 24th, paid the composition money, and on the 27th January 1841, obtained a patent for his survey. This done, he successfully *caveated* the application of *H.*, for a patent on his survey. It appeared that *H.* was seized of the tract which his warrant was issued to re-survey; had made his survey before *J.* obtained his special warrant, and paid his composition money in time; his title relates to his survey of the 19th May 1840, and was prior in point of equity to *J's* title.

Hoye *vs.* Johnston.—1844.

An equitable title to vacant lands, will, in equity, prevail against a legal title, when the party possessed of the legal title, has procured it by means of fraudulent representations to the officers of the land office. Upon a bill, in such case, the patent will be vacated in favor of the equitable title, or the patentee decreed to convey the land to the injured party.

Under the act of 1822, ch. 128, sec. 3, the composition money for vacant land in *Allegany* county, may be paid within twelve months after the date of the certificate of survey.

By the terms of a special warrant, a party is forbidden from running his lines within the lines of any former or more ancient survey.

A party who sues out of the land office, a general or special warrant of survey, to take up vacant lands, has an opportunity to know, and is presumed to know, that before he obtained his warrant, another warrant for the same land, if the fact be so, had actually been located.

When a party has presumed or actual notice of a location made, and prevails upon a public surveyor to violate the instructions under which he was acting, and to misrepresent to other officers of the State, who were to judge of the fairness and regularity of such surveyor's proceedings, that in executing a warrant, he had conformed to the rules of the land office, and had so enabled a party to obtain a patent for land, this is a fraud affecting such patent.

Upon a bill in equity, filed by the holder of an equitable title to vacant land under the State, against the patentee of the same land, to vacate the patent as fraudulently obtained, the State need not be made a party. Ample relief may be had without the State, who has no interest in such a case.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 5th July 1841, by the appellant against the appellee, and alleged, that *John Hoye* of *Allegany* county, being seized of a tract of land in said county, called *Flavia*, held under a patent from the State, bearing date on or about the 7th September 1838, and one other tract called *Rotunda*, contiguous to which your orator supposed there was some vacant land, he did on or about the 5th September 1839, sue out a warrant to re-survey his aforesaid tracts, with liberty to include the contiguous vacant lands. That said warrant was shortly after placed in the hands of the surveyor of the said county for execution, and was by him on or about the 19th May 1840, executed, and a certificate of the re-survey made on behalf of your orator was returned into the aforesaid land office, whereby it appears that your orator's original tract called *Flavia*, contained the quantity of 354½ acres, and that the

surveyor had included the quantity of 162½ acres vacant land, and that the whole was reduced into one tract by the name of "*Flavia Resurveyed,*" as by reference to the said certificate now remaining in the land office, will more fully appear; and your orator herewith files a certified copy of the same as a part of this, his bill of complaint; that he duly compounded on his aforesaid certificate of re-survey, and thereby entitled himself to demand a patent therefor, and but for the acts and doings of the defendant, hereinafter named, would have obtained such patent in due season. But now so it is, that a certain *Edward Johnston,* contriving and intending to defraud your orator of the benefit of his aforesaid warrant of re-survey, and to appropriate the said vacancy to himself, sued out of the said land office, on or about the 29th June 1840, a special warrant for one hundred acres, to affect the aforesaid vacancy which had been included, as aforesaid, in your orator's re-survey, and on or about the 14th July 1840, laid the same upon the said vacancy, and caused a certificate thereof to be returned to the said land office, by the name of "*Fort Meigs.*" That said *Johnston* paid the composition money and obtained a patent therefor, on or about the 27th January 1841. And your orator files herewith an authenticated copy of the said certificate, and prays that the same may be taken as part of his bill. And that the said *Edward Johnston* having thus obtained from the State a grant of the vacant land which was designed to be affected, and was in truth bound by your orator's aforesaid warrant of re-survey, and the actual execution thereof, prior to the date of the said *Johnston's* warrant, the latter, nevertheless, having, as aforesaid, procured the grant, entered *a caveat* against the issuing of a patent upon your orator's certificate, which *caveat* the Chancellor, as judge of the land office, by an order dated the 10th April 1841, ruled good, as will appear by the aforesaid certificates, and other, the proceedings in the said land office, to all of which your orator prays leave to refer as parts of this bill. That the said *Edward Johnston,* whom your orator prays may be made a defendant to this bill, at the date of the warrant, so as aforesaid sued out by him, and at the time of its execution,

as aforesaid, on the 14th July 1840, had full and direct know-ledge that your orator had previously surveyed and included the land now in dispute, in his tract called "*Flavia Resurveyed;*" and that he, the said *Johnston,* therefore purchased, with no-tice of your orator's prior equitable title and in fraud thereof, and your orator herewith files the copy of a statement of facts agreed and admitted by the parties upon the trial of the *caveat* in the land office, whereby it clearly appears, that the said *Johnston* had full and explicit notice of the equitable rights of your orator, at the time he took out and executed his said war-rant; and your orator prays that the said copy may be taken as a part of his bill. And your orator is advised, that though your honor as judge of the land office, and in conformity with the ancient rules and usages of that office, ruled the aforesaid *caveat* against his before mentioned certificate of re-survey good, yet that judgment does not preclude him from asking for the equitable interposition of this court, and that, upon es-tablishing the truth of his aforesaid allegations, he will be en-titled to a decree vacating the patent, so as aforesaid, issued to the said *Edward Johnston,* or declaring that he shall stand seized of the land so granted, as trustee for your orator, and requiring him to convey the same to your orator. And your orator alleges, that he was utterly ignorant of the existence of the said warrant, and of the execution thereof by the said *Johnston,* until after the patent had been granted to him, the said *Johnston,* as aforesaid, and that the same operated as a surprise upon your orator, but that all the acts and proceed-ings of the said *Johnston* were had with full notice of the existence of your orator's warrant, and of its execution. In consideration, &c.

With this bill the various exhibits, therein referred to, were filed.

The defendant, *Edward Johnston,* by his answer admitted, that on the 29th June 1840, he sued out of the *Western Shore Land Office of Maryland,* a special warrant for one hundred acres, to affect a certain vacancy which he had previously dis-covered, and that in pursuance of said warrant, a survey was

made, and the said vacancy was found to contain two hundred and forty-nine acres and three-eighths, and called "*Fort Meigs*," according to the certificate thereof, returned into the said land office. He further admits, that at the time when said survey was made, he was informed by one of the deputy surveyors of *Allegany* county, that the principal part, or perhaps the whole of said vacancy, had already been included in a survey which had been a short time previously made out for the complainant, called "*Flavia Resurveyed.*" That upon receiving this information, he did not think proper to suspend the further execution of his warrant aforesaid, but caused the same to be completed and a certificate thereof returned, as aforesaid, believing that he was fully entitled to said vacancy. That having inspected the complainant's pretensions thereto, he saw, as alleged in complainant's bill of complaint, that his claim was founded upon a warrant of re-survey, which had been sued out upon the tract of land called "*Flavia*," which tract, if it can be assumed to exist at all, this defendant knew was not contiguous to said vacancy. That in order to ascertain the vacancy, this defendant had caused the elder adjoining tracts of land to be run out, of which "*South Bar*," patented to *Gen. James Swann* on the the 2nd March 1805, was one. That *Flavia* was also run out, but that it was found to lie entirely within the lines of "*South Bar*," and that being a much younger tract than "*South Bar*," it having only been patented on the 7th September 1838, this defendant regarded such tract as a non-entity, and looked upon the patent therefor, as a nullity. To show that *Flavia* does lie entirely within the lines of "*South Bar*," this defendant has caused a plat to be made out by the surveyor of *Allegany* county, which he herewith exhibits. Now this defendant is advised, that if at the hearing of this cause it should be assumed, that such patent is operative, and that *Flavia* has a potential existence, then upon its appearing, as shown by said plat, that *Flavia* is surrounded by the outlines of *South Bar*, and consequently cut off from the vacancy contained in "*Fort Meigs*" and "*Flavia Resurveyed,*" this defendant's title to the same, he being the patentee of

"*Fort Meigs,*" must prevail against the pretensions of the complainant. This defendant further admits, that after he had obtained a patent upon his certificate for "*Fort Meigs,*" he *caveated* the complainant's certificate of "*Flavia Resurveyed.*" That at the hearing of said *caveat,* he relied chiefly in argument upon the fact, that the vacancy in controversy was not contiguous to the complainant's tract, "*Flavia,*" and that after a full hearing of both parties, his honor, the Chancellor, as judge of the land office, ruled his *caveat* good. That as such judge, he decides in all cases brought before him, as by law he is bound to do, according to equity and good conscience, and agreeably to the principles established in the high court of Chancery, as if the matter were brought before him by a bill in chancery? This defendant, therefore, claims the decision which was made by the judge of the land office in said *caveat* case, as final and conclusive upon the question of right to said vacancy. That such decision is surely a judgment or decree between the same parties upon the same subject matter? And that the complainant cannot possibly rid himself of the binding and conclusive effect of such decision, unless he can shew (which is not pretended,) that such decision was brought about by fraud, accident, or surprise, or other similar means. And this defendant denies all; and all manner of fraud and conspiracy, with which he is charged by said bill, and prays, &c.

With this answer various exhibits were also filed; a commission was issued, the facts established under which, appear in the opinion of this court.

At July 1842, the Chancellor, (BLAND,) dismissed the bill with costs, being of opinion, that the patent of the defendant, *Edward Johnston,* has been properly obtained, without fraud, according to the law and rules of the land office, and therefore, cannot, upon the facts shewn, be vacated by any regular proceeding, much less by a bill like this, to which the State is not a party.

From this decree, the complainant appealed to this court. .

The cause was submitted to ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MAGRUDER, J., upon arguments, in writing.

J. JOHNSON for the appellant.

This case comes before the court, upon an appeal from a decree of the Chancellor, passed on the 22d July 1842, dismissing the appellant's bill, with costs.

The facts as charged, admitted, and proved, are as follows:

The appellant obtained, regularly, a patent for a tract of land in *Allegany* county called "*Flavia*," on the 7th of September 1838; and on the 5th of September 1839, he took out a warrant to re-survey the same, and add contiguous vacancy, which warrant was executed on the 19th of May 1840; returned to the land office on the 31st of July 1840; and the composition money paid on the vacancy and improvements included in the re-survey, on the 15th of February 1841.

| | |
|---|---|
| The appellant's original contained | 354½ acres. |
| The vacancy included in re-survey | 162½ " |
| Making | 517 acres. |

On the 29th of June 1840, the appellee took out a special warrant for one hundred acres, to affect the same vacancy, which he caused to be executed on the 14th of July 1840, and returned a certificate to the land office on the 24th July 1840; paid the composition on the same day, and on the 27th January 1841, obtained a patent, calling the tract "*Fort Meigs*."

And on the day of the date of his patent, to wit, the 27th of January 1841, the appellee filed a *caveat* against the appellant's certificate, which the Chancellor, as judge of the land office, on the 10th of April 1841, ruled good.

The appellant then, on the 5th July 1841, filed his bill in the Court of Chancery, praying that the patent which had been issued to the appellee, might be vacated, and for general relief, upon the ground, as charged in the bill, that the appellee, when he obtained his warrant and made his survey, had actual knowledge, that the appellant had previously included the same land in his re-survey of "*Flavia*," and that, therefore, the appellee having purchased the land, with notice of the prior equitable title of the complainant, was guilty of a fraud upon his rights.

The defendant's answer admits, that at the time of his survey, to wit, on the 14th of July 1840, he was informed, that the vacancy had been included in the prior survey of the complainant; but that notwithstanding such notice of the complainant's prior survey, he thought fit to proceed with the execution of his warrant, because, as alleged in the answer, the defendant had ascertained, that the complainant's original tract "*Flavia*," was embraced within the lines of an elder tract, called "*South Bar*," patented to *Gen. Swann* on the 2nd of March 1805. An agreement, signed by parties properly authorised, shews conclusively that the appellee, when he made his survey, had actual notice, that the land in controversy had been, prior thereto, included in the appellant's resurvey upon his tract called "*Flavia*."

It also appears, that "*Flavia*," the appellant's original, consists in part, of lots distributed to soldiers of the *Continental army*, in *Allegany* county, which lots were not alienated by the soldiers, to whom they were distributed, fifty years past.

Under an order of the Chancellor, passed on the 8th of February 1842, a survey was made, and the plat shows, that the 12th line of the appellant's original, touches the vacancy.

The Chancellor's decree, dismissing the bill, it is insisted, is erroneous, for the following reasons:

1. That the appellant's proceedings upon his warrant of resurvey, were all in strict accordance with the laws and regulations of the land office.

The warrant is dated 5th September 1839, and the re-survey was made, and the certificate returned to the land office on the 31st July 1840, and of course, within eighteen months of the date of the warrant. *L. H. As.* 273, 325, 466. Act 1795, chap. 88, sec. 7.

The appellee does not deny, that the survey was made, and the certificate returned in time; but he says, the composition money was not paid, until after the time limited by law for that purpose.

But the certificate of the re-survey is dated on the 19th of May 1840, and the composition paid on the 15th of February

1841, within twelve months from the date of the certificate, which, so far as *Allegany* county is concerned, is in time, by the 3rd section of the act of 1822, chap. 128, which declares, "that all surveys of land, made after the passage of this act, in *Allegany* county, and returned to the *Land Office of the Western Shore*, and which shall not be compounded upon, within twelve months from the date of the certificate, shall be null and void;" thus by the clearest implication saying, that if the composition money be paid within the twelve months from the date of the certificate, it shall not be void. This act, shortly after its passage, received a construction from the late Chancellor, who said, that by virtue of it, parties in *Allegany* county have twelve months from the date of their certificates to pay the composition money, and in this construction, the present Chancellor expressed his entire concurrence.

The case then being free from this difficulty, the 2nd question relates to the equity of the appellant, to have the patent, granted to the appellee, vacated as fraudulent, because the appellee, at the time he made his survey and paid the caution money, had actual notice of the prior equitable title of the appellant.

The appellant's warrant of re-survey, dated the 5th of September 1839, gave him an equitable interest in all the contiguous vacancy, from its date. *Howard vs. Cromwell*, 4 *H. & McH.* 325, 330.

Under such a warrant, the party acquires the right of pre-emption in all the adjoining vacancy, and if he makes his survey, and pays the caution money in two years from the date of his warrant, he has a complete equitable interest in all the vacancy included in his survey. *Hammond vs. Norris*, 2 *H. & J.* 140.

Such being the established law of the land office, it would seem to follow, that a patent granted to another, in contravention of this law, ought not to be allowed to stand in the way of the party clothed with such rights.

If the appellant could have obtained a patent upon his certificate, there can be no doubt it would, upon the doctrine of

relation, have over-ridden the patent granted to the appellee; but this could not be done, because it is an inflexible rule of the land office, that two patents shall not, if it be known, issue for the same land, and the appellee having obtained a patent, though in fraud of the rights of the appellant, that patent must be put out of the way, before those rights can be perfected.

But this case does not stand, nor is the appellant's claim to relief, founded exclusively, or chiefly, upon his superior title, resting upon his prior warrant and certificate, against which it might be urged, that the greater diligence of the other party, had rightfully deprived him of these advantages. The admissions of the answer, and the agreement referred to, show that the appellee, when he made his survey, had actual notice, that the land in dispute, was included in the appellant's elder survey.

The appellee then, stands in the predicament of a purchaser, not with constructive notice merely, but actual notice of the prior equitable title of another, and consequently, his title will be made subservient to the title of the latter. A court of equity will consider such a purchaser, as a trustee for the benefit of the party whose rights he has thus sought to defraud or defeat. 1 *Story Eq.* 383, 384, *sec.* 394. *Murray vs. Ballow,* 1 *John. Ch. Rep.* 566, 576. *Murray vs. Fuister,* 2 *Ib.* 157. *Sugden,* 526, 527. *Mead vs. Ld. Orrery,* 3 *Atk.* 235, 238.

Taking the legal estate, after notice of a prior right, makes the party a *mala fide* purchaser; as if a subsequent purchaser has notice, at the time of his purchase, of a prior unregistered conveyance, he will not be allowed to avail himself of his title against the prior conveyance. 1 *Story Eq.* 385, 386, *sec.* 397.

The appellee supposes that he will not be visited with the consequences attaching to a purchaser, with notice of a prior equitable title, because, though he had notice at the time of executing his warrant, he had, as he says, no notice at the time of purchasing it.

Now the warrant of re-survey taken out by the appellant, bears date the 5th September 1839, and was actually executed on the 19th of May 1840, whilst the appellee's warrant was

not issued until the 29th of June 1840, more than nine months subsequent to the appellant's warrant, and one month and ten days after the actual location of it. And consequently, when he purchased his warrant, he had constructive notice of the prior warrant and survey made by the appellant. 1 *Bland*, 326.

But he does not, in his answer, rest his defence upon this ground. The ground taken by him in his answer, is, that upon learning from the surveyor, when making his own survey, that the land he was about taking up, as vacancy, had been included in a prior survey by the appellant, he nevertheless determined to proceed, because he had ascertained to his satisfaction, that the plaintiff's original tract, "*Flavia*," was entirely included within the lines of an elder tract, called "*South Bar*," patented to *Gen. James Swann*, on the 2nd of March 1805.

The appellee, therefore, does not rest his case upon the ground of want of notice, but upon the supposed want of authority on the part of the appellant, to take out a warrant of re-survey. He says he had no such authority, because his tract, "*Flavia*," was included in the elder tract, "*South Bar*."

Now in answer to this pretension, it need only be said, that this court, in the case of *Hoye vs. Lee*, December term 1843, decided, that "*South Bar*" had no existence, for the reason, that it was embraced in *Soldiers Lots*, which had not, when "*South Bar*" was taken up, become liable to *escheat*.

But this pretension, that the appellee's title is to be respected, because he had no notice of the appellant's prior warrant and survey, at the time he purchased his warrant, though he had notice before he executed it, is unsustainable for another reason.

When he went upon the ground, to execute his warrant, on the 14th July 1840, he found it occupied by another, under a warrant then, undeniably, in full force, and which had been executed two months before, to wit, on the 19th of May 1840. Was it not then his duty to stop, and ask the State to reimburse him for the expense of his special warrant, by giving him authority to take up land elsewhere, according to the rules

of the land office. This he did not choose to do, but undertaking to decide for himself, that the appellant's warrant was invalid, he proceeds with his survey, and presses with all the rapidity which the law would allow, the grant of a patent to himself, that he might be in a position to frustrate the prior right of the appellant, when he should call upon the State to comply with her engagement to him.

If, when apprised, as he admits himself to have been before he made his survey, of the clear rights of the appellant, he had suspended his proceedings, no injury would have accrued to any one; and the State might have kept her contract with the appellant, by giving him a patent for the land he had contracted to purchase, upon his complying with conditions, which she had herself prescribed, and with which conditions, he did strictly comply. Not having pursued this course, he, the appellee, must take the consequences of his attempt, to appropriate to himself property, to which another, as he knew, had a prior equitable title.

It is no objection to the appellant's application, to a Court of Chancery for relief, that the Chancellor decided against him as judge of the land office; such decision may be reviewed in Chancery by original bill. *West vs. Jarrett*, 1 *H. & J.* 538. In that case, a bill was filed in equity, after an adverse decision in the land office, and the defendant was decreed to convey to the complainant, the land included in the elder survey of the latter.

In the case of *Garretson vs. Cole*, 1 *H. & J.* 370, the Court of Chancery compelled a party, who had obtained a patent contrary to the rules of the land office, to convey to another party who had fairly taken up the same land, notwithstanding the Chancellor, as judge of the land office, had, upon *caveat*, decided against the complainant.

The power of a Court of Chancery, to vacate a grant improperly obtained, was also decided in the case of *Kelley's Lessee vs. Greenfield*, 2 *H. & McH.* 140, 141, 142.

In the case of the State, at the relation of *Yates vs. Smith and Purviance*, 2 *H. & McH.* 244, a patent was vacated by

the Chancellor, because obtained from the land office, contrary to law; and in the case of the State, at the relation of *Hindman et al. vs. Reed,* 4 *H. & McH.* 6, the defendant was decreed, to convey to the State land included in his grant, which had been reserved to the use of the proprietory as a manor.

It is stated in the appellee's second point, that the attorney general is a necessary party to this suit.

In the cases of *West vs. Jarrett,* 1 *H. & J.* 538, and *Garretson vs. Cole, Ib.* 370, the attorney general was not a party, and in the latter case, which was a bill filed after a patent granted, the patentee was compelled, by decree, to convey to another, who, as the complainant in this case has done, had fairly complied with the regulations of the land office.

It is insisted therefore, that the attorney general is not a necessary party; but if the court should think otherwise, the decree will not on that account be affirmed, but the case will be remanded to the Court of Chancery, for further proceedings, that substantial justice may be done, by making the necessary parties under the provisions of the act of 1832, chap. 302, sec. 6.

The appellant respectfully insists, that a decree should pass, vacating the appellee's patent, or that he should be compelled to convey the land therein contained to the appellant.

By T. S. Alexander for the appellee.

The appeal in this case is taken from a decree of the Court of Chancery, dismissing the bill filed by the appellant in that court, for the purpose of vacating a patent which had been granted to the appellee, for a parcel of land in *Allegany* county, with the view of obtaining a grant to himself, for the same land.

The appellant claims, under a warrant of re-survey, issued on the 5th September 1839, and executed on the 19th May 1840. His certificate was returned on the 31st July 1840, and compounded on the 15th February 1841.

The appellee claims under a special warrant, granted him on the 29th June 1840, and executed on the 14th July 1840.

His certificate was returned on the 24th July 1840. On the same day the composition was paid; and on the 27th January 1841, he obtained his patent. It is conceded, that all his proceedings were taken according to the regular course of the land office. The only objection taken to his title in equity, is, that the appellant had acquired an equitable title to the same land by virtue of his warrant of re-survey, which would have been perfected by the issuing of a patent to him, but for the proceeding of the appellee, which is supposed to have been fraudulent as against the appellant.

The appellee, it is insisted, is a purchaser with notice of the prior equity of the appellant.

*Express* notice to the appellee is not shown, at any period anterior to the day of executing his warrant. At the time of purchasing out his warrant, he had no notice, in fact, of the appellant's pretensions. At the time of contracting with the State, and paying the first instalment of the purchase money, he was a purchaser without notice. He was, therefore, authorised to proceed to perfect his title, notwithstanding subsequent notice, and having now obtained the legal title, he may retain it against the equitable title of the appellant. I repeat, the admission and proof of actual notice applies to the time of survey, and not to the time of suing out the warrant.

He is not to be affected by constructive notice, upon a principle, that every man is bound to notice all the proceedings in the land office, in relation to land titles. The land office, though an office of record, is not a court of record; and no rule can be found more extensive, than that all persons are bound to notice the proceedings of courts of record. That they are not bound to notice proceedings in an office of record is clear. The enrolment of a deed, properly executed and acknowledged, is notice to all the world of a transmission of the title. This is allowed from the necessity, &c., of the thing, and for the security of titles. But it is not evidence of any covenant in the deed not connected with the title; nor is the enrolment of a deed, defectively executed or acknowledged, evidence for any purpose whatever. This distinction is war-

ranted by the limitation of the rule itself. For a proceeding in a court of record binds only parties, and others claiming under parties *pendente lite.* A judgment against A, as heir of B, would not bind C, another heir of the same ancestor. Upon what principle then, shall a proceeding in the land office by the appellant, to which the appellee was no party, and of which he had no notice, vitiate a title acquired by the appellee *bona fide,* and for a valuable consideration paid down?

The appellant's case requires the concession of this proposition, that no one is bound by constructive notice of the proceedings in the land office. The only principle on which the opposite proposition can rest, is, that the proceeding is *in rem,* and binding the title, must affect with notice, all who would deal with the title. Let this be admitted: how then stands the case? The appellant had notice, constructively, of the suing out of the appellee's warrant, and of its location, of the return of his certificate, of payment of composition, and of his application for a patent thereon. He permits the appellee to negotiate with the State for a grant of the land in dispute, and pays down his purchase money, concealing from him the appellant's claim of title to the same land. Is it not fair to argue, that silence, under such circumstances, ought to be accepted as a waiver of the claim? If I permit another to build on my land without objection, I cannot afterwards assert my title against him. If I witness the execution of a conveyance, without giving notice of my incumbrance on the land thereby conveyed, the purchaser may claim protection against me and my heirs. Shall the appellant be permitted then to rely on a title, the knowledge of which he concealed from us until after we had parted with the purchase money, and acquired a legal title to the property purchased? Upon the principle of constructive notice, the appellant was capable, and his concealment of his title has operated to an injury. If his title had been disclosed in season, the composition money would not have been paid, and our warrant might have been located elsewhere. At this time the appellee has no remedy for recovering back the money he has paid the State. I con-

clude, therefore, that the appellant will not strengthen his case by relying on the doctrine of constructive notice; and, that as the appellee had purchased out his warrant before he received any notice, in fact, of the appellant's claim, the latter has no equity against him.

Having thus shown that the appellee's title was not obtained against equity, I will next inquire into the merits of the appellant's pretensions. Now it is conceded, on the other side, that according to the rules of the land office, a patent cannot issue for land which is already granted. The first patent must be vacated, before a second can be issued. Hence it follows, by his own admissions, that the patent granted to the appellant, in 1838, was obtained irregularly, illegally, and by a fraudulent suppression of the fact, that the same land had been previously granted to *Gen. Swann*. Can he predicate an equity upon a title obtained by such practices? If the appellee's patent was revoked, it would not avail the appellant. The outstanding title in the grantor of *South Bar*, would present an insuperable obstacle to the issue of a patent on his certificate of re-survey. The Chancellor would never grant a patent in confirmation of a title, which, by the appellant's own showing, originated in a violation of the laws of the office.

The counsel for the appellant, anticipating this objection, has attempted to evade its force by affirming, that in some other case, it has already been adjudged by this court, that the patent for *South Bar* must yield to the patent for *Flavia*, the original. In answer to the argument of the learned counsel, it will be sufficient to remark, in the first place, that the record now before the court, and upon which alone, the court's judgment must be pronounced, furnishes no evidence, whatever, of any such alleged adjudication. And secondly, that in fact the cause to which the learned counsel would refer, has been remanded to the county court for a new trial, in the progress of which the rights of the parties may assume very different aspects. At this moment, and especially in this cause, the court is bound to assume the validity of the patent for *South Bar;* and must therefore conclude, that the rights claimed by the

appellant, will, if allowed, operate to the prejudice of that elder grant. Where is then the basis, on which the appellant's pretence of equity may be rested?

If the patent for *South Bar* is valid, it clothed the patentee with the legal title to the land embraced within its limits, and no legal or equitable title to the same land could be challenged by the appellant, under color of the patent for *Flavia*, the original. Upon this hypothesis then, the appellant's warrant of re-survey was irregularly issued. For none other than the owner of the legal title, can sue out a warrant to re-survey the original, for the purpose of affecting contiguous vacancy. The warrant of re-survey was void simply, at least, conferred no right as against the appellee claiming under his special warrant. All this is apparent from the case of *Hammond vs. Norris*, 2 *H. & J.* 130. In that case, the court denied to a warrant of re-survey, its usual efficacy in binding the title to contiguous vacancy, on the ground of a defect in the plaintiff's legal title to the original. But the court further held, that a warrant of re-survey, obtained on a title defective at law, but equitable, may operate as a common warrant, and vest in the party an equitable interest in all the vacancy which may be included in the re-survey, from the time of payment of the composition money due thereon.

In applying the principles of that decision to the present case, it is to be observed:

1st. That in the original, on which the appellant sued out his warrant of re-survey, he had no equitable title. His original patent was sued out in violation of the rules of the land office, and in fraud of the rights of *Gen. Swann.* Under color of a title, thus tainted in its origin, no title could be asserted at law or in equity. I take the distinction between the case of a party, who having fairly purchased the original, endeavors, by a warrant of re-survey, fairly sued out, executed, and compounded on, to acquire title to contiguous vacancy, and that of a person, who, conscious of the fraudulent origin of his pretended title, would yet use it as an instrument for extending his acquisitions.

2nd. The court in *Hammond vs. Norris*, decided, that a warrant of re-survey, sued out in a *bona fide*, though defective title in the original, will, after its location, be permitted to operate as a common warrant, provided the certificate of re-survey is returned and compounded on, before the grant is issued, on a subsequent survey. All those circumstances, i. e.—1, actual location; 2, return of certificate; 3, payment of the composition money; must concur to give title as against a subsequent purchaser. It is expressly declared, that the equity arises out of payment of the composition money, and the patent relates back only to the date of the certificate of re-survey. In this case, it is to be remarked, that the patent to the appellee was issued before payment of composition by the appellant, on his certificate of re-survey; and that the appellee had actually returned and compounded on his certificate, before the appellant's certificate was returned into the office.

Waiving, in the next place, all objection to the appellant's title in the original, and to the regularity of the warrant of re-survey, I will next inquire, whether, upon those concessions, he can predicate an equity to have the appellee's patent vacated? The right of the appellant, in this aspect of the case, must rest on the position, that the suing out of his warrant of re-survey was an appropriation of all vacancy contiguous to the original; and that a patent issued on his certificate would have related back as a conveyance to the date of the warrant. But in all the cases, it is laid down, that this principle of relation is an equitable principle, and that a party claiming the benefit thereof, must show that he has, in all his proceedings, conformed to the rules of the land office. Any departure from those rules, or irregularity, or laches in executing his warrant, or returning or compounding on his certificate, will place him beyond its protection, vide *Dorsey's Ejectment*, 98, &c. Vide especially, page 103, and the case of *Beall vs. Beall*, there cited from 1 *H. & J.*, 346.

Upon the authority of those cases, I insist, that the appellant's right of priority, acquired under his warrant, was lost by his failure to compound on his certificate within twelve

months from the date of his warrant.   And I apprehend, that
if this case had originated in any other than *Allegany* county,
it would be conceded, that there had been delay in the pay-
ment of the composition money, and that such delay was fatal
to the pretensions of the appellant.   The endeavor of his
counsel is, to show that in regard to the time limited for pay-
ment of composition, there is one law for *Allegany* county,
and another for the rest of the State.   I must confess, that he
is sustained by the authority of *Chancellors Johnson* and *Bland*,
in his position, that in surveys in *Allegany* county, the time
for payment of composition is extended to twelve months from
the date of the certificate.   Nevertheless, I would most re-
spectfully submit, that such authority is not conclusive of the
question, when it comes under review of this court, and that
the opinions expressed by the late and present Chancellors,
tend to establish invidious distinctions, and to introduce anom-
alies, not contemplated by law.   The act of 1781, ch. 20,
sec. 6, declares, that the time for compounding shall be one
year from the date of the warrant.   By the act of 1795, ch.
88, sec. 10, if any certificate of survey or re-survey, shall be
returned, and not compounded for, *agreeably to law*, such sur-
vey or re-survey, shall be liable to a proclamation warrant.
The sec. 7 of the same act had declared, that no certificate of
survey or re-survey shall be received into the land office, unless
the same be passed by the examiner general, and returned to
the office within eighteen months from the date of the warrant.
Here is then the distinction taken, between a void certificate
and a voidable certificate.   A failure to return the certificate
into the office, within eighteen months from the date of the
warrant, annulled the certificate.   A failure to compound on a
certificate, duly returned within twelve months from the date of
the warrant, rendered the certificate voidable at the suit of any
one who would sue out a proclamation warrant to affect the
same land.   A certificate annulled, because of a failure to
have it returned within time, left the land, intended to be af-
fected thereby, in the same condition as if the warrant had not
been issued, and liable to be taken up on any warrant and in

any quantity. Under a proclamation warrant, the party was obliged to re-survey all the lands included in the original survey. Hence, it occasionally happened, that in *Allegany* county, large bodies were included in surveys which remained uncompounded on, and therefore, liable to proclamation, but to no other species of warrant; and therefore, by act 1804, ch. 75, reciting the grievance resulting in that county from that state of things, it is enacted, that all certificates of surveys of land in *Allegany* county, theretofore made and not compounded on, and then liable to proclamation, shall be on or before a day thereafter, unless then paid on or secured by proclamation, be vacated, &c. The clear effect of this act is, to annul the certificate after a certain time, but, in the meanwhile, to continue their liability to be proclamated. In other words, certificates then voidable, were to remain voidable until a certain day, and then to become absolutely void. This act related only to certificates which had been, previous to its passage, returned into the land office. In the year 1822, other certificates were discovered to be in a like predicament, and the legislature therefore, by a *supplement* to the former act, and after a like recital with that contained in the original, by section 1, enacts, that all certificates of surveys of land in *Allegany* county, made since the passage of the former act, and not compounded on, and therefore liable to proclamation, be vacated, &c., on and after a certain day, unless then paid on. Up to that day, it is clear, those certificates were to remain liable to proclamation. And it is equally clear, that the legislature did not intend to enlarge the time for payment of composition, in favor of the owners of any of the certificates embraced within the provisions of either of those acts. The interest of the public, was the motive for each enactment; and this object was to amend, by vacating those certificates, absolutely, after a certain day, unless, before that day, they should be proclamated under the existing laws. The next case of the legislature was, to provide against a repetition of the evil. This is done by section 3, which annuls all certificates thereafter to be made and returned, and not compounded upon

within twelve months from the date of the certificate. This section, I submit, ought to be subject to the principle of construction, which is applied to section 1 of the same act, and the original act of 1804. And as neither affected to extend indulgence to the holders of certificates, we ought not so to construe the sec. 3 of 1822, as enlarging the time within which future certificates should be compounded. We ought not to assume, that the legislature designed to extend indulgences to the people of *Allegany*, which were denied to her citizens re-siding elsewhere. The true construction, I insist, is, that in future, certificates are to be returned within the time limited by the general law; are to be compounded on as directed by law; are to remain liable, as heretofore, to proclamation, and after a default, continuing until after twelve months from the date of the certificate, the survey shall be entirely annulled, and the land was so restored to its original condition, and be liable to appropriation as if it had never been surveyed. Not one word, it is to be observed, is said about repealing procla-mation warrants in reference to *Allegany* county, nor is any state of facts given, which would have justified the legislature in extending to the people of *Allegany*, an indulgence for nearly thirty months, whilst the rest of the State remain subject to the original law, and may be required to perfect their titles within twelve months from the date of their warrant. It is to be observed, in conclusion, that this question may be treated as an open question, without any general inconvenience. A reversal of the Chancellor's opinion, in regard to the con-struction of the act of 1822, may, and will change the practice in the land office. But it cannot possibly impair any title de-rived under that act. The practical effect of the construction placed on the act, has been to prevent the acquisition of titles under color of proclamation warrants. But the titles, actually granted, will, under any construction of the act, remain un-impaired.

It is again insisted, that the form of the proceeding is im-proper. The attorney general ought to have been a party suing by information. The general rule is to be found in

*Mitford's* pleading. A leading case on the subject, is to be found in 2 *Sch. & Lefr.* 617. I think it may be confidently affirmed, that, in every case in which the validity of the *King's grant* has come into question, the attorney general has been a party, and that in every instance in which the proceeding has been instituted to vacate a patent, it has assumed the shape of an information. It is fit, that in every case in which the *King's acts* are brought into question, there should be some one present, charged to protect his rights, and vindicate his justice. In many instances, the *King* is the exclusive judge of the propriety of vacating his own grant. The subject can assume the privilege of controlling or directing this discretion only where the grant conflicts with his vested rights; and even here the *King's* officers must have the privilege of determining whether there is a vested right, which is in peril by the grant. In the present case, the necessity for the presence of the attorney general is made apparent by a consideration of the relief which is asked, and which alone could be granted. The only relief that can be given, would be to vacate the appellee's patent, whereby the title would be reverted in the State. A conveyance from appellee to the appellant, could not be decreed, since this court cannot judicially know, nor can it be found, upon the proofs taken and admissions made between these parties, that the appellant has complied with all the conditions of the land office, and therefore, is entitled to a patent. It is admitted, for the purpose of this suit, that the appellant has compounded on his certificate. No such admission has been made on the part of the State. The case has been conducted between these parties as if the existence of the outstanding grant to the appellee, formed the only obstacle to the issuing of a grant to the appellant. For any thing that this court knows, or can judicially discover, there may be a multitude of other objections resting on a like number of *caveats,* interposed by other parties. Will the court undertake to say the appellant has complied with all the regulations of the land office, and the appellee's patent being removed, is entitled to his grant?

The appellant's counsel supposes this question is set at rest by the cases of *Garretson vs. Cole*, 1 *H. & J.*, 370, and *West vs. Jarret*, 1 *H. & J.*, 538. In one of these cases relief was granted by the Chancellor, but his decree was reversed on appeal. In the other, relief was denied by the Chancellor, but granted by the Court of Appeals. In neither of those cases, was the objection, now relied on, taken. And it is to be observed, that in each case there were circumstances of actual fraud, in violation of contract, which presents a peculiar case. It is not like the present, which rests on a pretended violation of the laws of the land office. In other cases, moreover, it will be found, that the attorney general was treated as a necessary party. These cases are just as strong to show, that he ought to be made a party, as the others can be to show, that he need not be made a party. If the State has an interest in the suits, that interest must be represented by the attorney general. If the State has no interest, then his presence as a party is improper. Now, I insist, that a decree passed on an information by the attorney general, is conclusive to show, that the State has a substantial interest in the subject of the suits. On the other hand, a decree passed between private parties only shows, that the court may have overlooked the existence of that interest, which needed the intervention of the State's attorney. The cases to which I refer, are to be found in 2 *H. & McH.* 201, 244. 4 *H. & McH.* 6. 1 *H. & J.* 332. 2 *H. & J.* 472, 487.

The learned counsel next insists, that if it should be adjudged, that the attorney general is a necessary party, the case may be remanded to the Court of Chancery, for further proceedings. This may be done, where the party entitled to sue, in bringing before the court the material defendants in interest, omits to make defendants of others, whose presence is necessary, for the purpose of making title or passing a complete decree. But there is no instance in which a case has been sent back, to make complainants of others, who ought to have sued with the complainant. When the cause is returned to the Court of Chancery, it stands as if no appeal had been

taken, or decree entered, and the court is authorised to permit any proceedings to be had, which might have taken place anterior to the passing of the decree.   Now, I apprehend, the practice in regard to making new parties, by amendment, would not justify the introduction of a new party as complainant.   If one of two obligees, should inadvertently sue the obligor, he could not amend by joining his co-obligee, as complainant.   He would have to dismiss his bill, and begin anew, or suggest a reason for bringing him before the court as a defendant.   And the reason for this distinction is obvious.   I may be made a defendant against my consent, whenever my presence is necessary to the determination of right between others.   But I cannot, without my consent, be made to assume the attitude of complainant.   The court cannot authorise A to use the name of B, as complainant.   Nor is it just; nor would it conduce to dispatch or economy in the general administration of justice, that B should be permitted in concert with A, to become a party complainant to a suit, originally instituted by B.   New process would require to be issued on such an amendment; and the defendant would be at liberty to make a new defence to the entire case.   Where is then the advantage to be gained by a change in the practice?   The utmost that can be said is, that the bill should be dismissed, without prejudice.

The present, is stronger than the case I have already stated. The attorney general is the necessary party complainant.   He may sue on his mere motion, or in the relation of the present appellant.   It is not necessary that the appellant should be a party at all.   If he is permitted to unite with the attorney general, he is an auxiliary, and not a principal party, and his presence is necessary only to enable the court to make a complete decree.   He stands pretty much in regard to the attorney general, as a *feme covert* does who sues without her husband. Could a *feme covert*, suing alone, amend by making her husband a party?

I submit, then, that the attorney general is a material and necessary party; that the suit ought to have assumed the form

of an information, and not that of a bill. For these reasons this decree ought to be affirmed, without regard to any supposed merits.

Next, I submit, that the appellant has no merits, and I rely much on the fact, that hitherto no effort has been made to set aside a patent, upon the ground of notice, simply of a supposed prior equity in the complainant. The absence of any such case is a strong, if not conclusive argument, against the claim pretended.

MAGRUDER, J., delivered the opinion of this court.

The plaintiff in error, filed his bill in the Court of Chancery, to vacate a patent which the defendant had obtained, on the ground, that the survey on which the patent was granted, was in fraud of his, the plaintiff's right.

These facts appear in the case. The plaintiff on the 5th September 1839, obtained a warrant of re-survey. He made his survey on the 19th May 1840; returned his certificate of survey on 31st July 1840; and paid the composition money on the 18th February 1841.

The defendant obtained a special warrant, 29th June 1840, (more than one month after the plaintiff's survey of his land,) executed it on the 11th July 1840, returned his certificate of survey, and paid the composition money, 24th July 1840; and on 27th January 1841, procured his patent, and then entered a *caveat*, to prevent the granting of a patent to the plaintiff, on his certificate of survey. The two certificates of survey include the same land. As the defendant had obtained a patent for land, comprehended in the plaintiff's certificate, as vacant land, no patent, according to the rules of the land office, can be given to the plaintiff until the defendant's patent is vacated.

One of the grounds of objection, to the relief asked, is, that the plaintiff was not seized of the tract of land, on which he obtained his warrant of re-survey. It appears, however, that the tract of land called *Flavia*, which was to be re-surveyed, was granted to the plaintiff himself, 7th September 1838; and that the land in controversy, was contiguous to that tract.

The objection is, that this same parcel of land, had been pre-viously granted to *James Swann.* The plaintiff's counsel in-sists, that it has been adjudged, that the alleged grant to *Swann,* must yield to the patent for *Flavia;* and the answer given to this, is, that the adjudication no where is to be found in this record; and from that adjudication, the plaintiff in error can derive no advantage. This will not be controverted; but then, the record furnishes no evidence, that the land claimed for *Swann* was an older tract than that of the complainant. It would be difficult for the court to discover, by an inspection of this record, that the plaintiff, at the time that he obtained his warrant of re-survey, was not seized of the tract called *Flavia,* and for which he, himself, had obtained a patent.

In addition to this, it may be remarked, that the plaintiff had made his survey before the defendant had obtained his special warrant. In the case of *Hammond vs. Norris,* the general court determined, that although a person, who has not a title to the land on which he obtains a warrant of re-survey, cannot thereby claim a right of pre-emption; in all contiguous vacancy, yet, such a warrant will operate as a common war-rant. See 2nd *Harr. & John.* 141. And the plaintiff's cer-tificate of survey, being older than the defendant's special war-rant, then, upon the payment of the composition money, the title to the land commences from the date of the survey; pro-vided, the composition money was paid by the plaintiff, with-in the time required by law.

The question then arises, was the composition money paid by *Hoye* in due time?

He made his survey, 19th May 1840; and paid the compo-sition money 1st February 1841. If the land had been situ-ate in other parts of the State, it would not have been paid, within the time required. But the warrant of re-survey was obtained on a tract of land in *Allegany,* and in that county all the vacancy, also, is situated. Whether, then, *Hoye* paid the money, within the time required by law, is to be decided by the act of 1822, ch. 128, sect. 3. This act declares all certificates of survey to be null and void, "which shall not

be compounded upon, within twelve months from the date of such *certificate.*" If this law was now, for the first time, to receive its interpretation, it would seem to be clear, that the owner of the certificate of survey, by the payment of the composition money, at any time within twelve months after the date of his certificate, would be entitled to all the rights which he might have secured to himself, by the payment of it on the day of its date. Such is the construction it has received ever since its enactment, and now, none other ought to be given to it. The composition money was paid by *Hoye,* within ten months after the date of the certificate.

It is concluded, then, that the plaintiff in error has a right to impeach the defendant's survey and grant; and is entitled to relief, if he has established the fraud, and asked relief in the proper form: was there any fraud practised by the defendant in the execution of his warrant, the survey of the land, the return of the certificate of survey, and obtaining the patent, by which the plaintiff in error is prevented from obtaining the patent to which he is entitled?

On the 29th June 1840, the defendant obtained a special warrant, and by the express terms of that warrant, he had authority to survey, in order to purchase the vacancy of which he gave a description; provided, that in making that survey, he did not run his lines "within the lines of any former or more ancient survey." This he was evidently forbidden to do; and to prevent unintentional violations of this, the *second* of the rules, adopted by the Governor and Council in 1782, and which from time immemorial had been a rule of the land office, was adopted. See the rule in *Landholders Assistant,* *p.* 435; and opportunity was thereby afforded to the defendant to know, and he is presumed to know, that before he obtained his warrant, another warrant, whether in name a general, or special warrant, had actually been located; and this land, now in dispute, had been included in a survey by another person. Besides being presumed to know this, his answer admits, that he had actual notice of it, and with a knowledge of it, he actually prevailed upon the surveyor, to

violate the instructions under which he was acting, and to represent to other officers of the State, who were to judge of the fairness and regularity of his proceedings, that in executing his warrant, he had conformed to the rules of the office; and by these misrepresentations the defendant so obtained the patent, which now enables him to deprive his antagonist of a grant, to which he is entitled. It is easily to be accounted for, that the officers of the land office, especially in earlier days, were not over-anxious for a rigid observance of the rules of office; or as a former Chancellor of *Maryland* observed, determined "merely with reference to the interests of the State, or perhaps its officers." The *lord propriatory*, first, and then the State, had land to dispose of; and if the vendee paid the price asked, for every acre, to which his grant gave him a title, the vendor was no gainer by a rigid observance of these rules. Still, it was the duty of all to take notice, and not to violate those laws; and more especially, not by acting fraudulently themselves, to obtain an unconscientious advantage of others. Some, who take up lands in *Maryland*, seem to think, that there is scarcely any regulation of the office, which men, dealing for land, are bound to observe; except that which requires a man to be seized of the tract of land, upon which he applies for a warrant of resurvey; and accordingly, this defendant, who claims a right to urge this, as an objection to a grant being issued to the plaintiff, claims it, because of violations by himself of many of the regulations of the office; whereby, the officers were deceived, and the plaintiff is defrauded.

If indeed, such objections, as it may be presumed that the defendant would urge, in opposition to the claim of the plaintiff to a grant, had been established by proof, in the case, it would not be necessary for the court to inquire minutely into the actings and doings, and the motives for those actings and doings of the defendant; but as, in his efforts to destroy the plaintiff's equity, he has been so unsuccessful, it can no longer be controverted, that this whole proceeding on the part of the defendant, was in fraud of the law; and that, of the frauds practised, in order to obtain a patent to himself, and then, by

the aid of that patent, to prevent the plaintiff from obtaining one, the latter has just cause to complain and to ask relief therefrom.

But, then it is contended, that although the defendant may have obtained his patent by fraud, and although the plaintiff in error, may be entitled to the relief which he seeks, yet, in this case, he cannot obtain it; and this, because the State has not been made a party, (either complainant or defendant,) to the suit. The counsel in the course of their argument, have furnished us with some cases like this, in which relief was given, although the State was not made a party to the bill of complaint.

We are told, that "the *non-joinder* of a mere nominal or formal party, will often be dispensed with, if entire justice can be done without him; or if he cannot, properly, be made a party to the suit." *Story's Equity Pleading* 196. No person should be made a party who has no interest in the suit, and against whom, if brought to a hearing, no decree can be had. Now, it would be difficult to prove, that the State has any interest in the decree, which may with propriety be passed in this case. The State, moreover, is not bound to be a party complaining; and has taken care to let it be known, that she does not choose to be a defendant in her own courts. It is not necessary that she should be a party; it should not rest with the State, or any department of its government, to say, whether one of her citizens, really aggrieved by another citizen, shall have justice administered to him. We have then precedent and rule to warrant the decision, that although the State is no party to the bill, ample relief may be had.

We therefore reverse the decree of Chancery, with costs in both courts, and decree, that the said *Johnston* shall convey to *Hoye,* in fee simple, all the land included in his patent, dated the 27th January 1841, for a tract called "*Fort Meigs.*"

DECREE REVERSED AND CAUSE REMANDED.