(Decided July 15th, 1859.)

---

## John C. Bridges and Hiram Woods *vs.* Catharine McKenna, by Prochein Ami.

A *feme covert* holding property to her sole and separate use, under the 8th sec. of the Act of 1842, ch. 293, is entitled to relief, *in equity*, against execution thereon by creditors of her husband.

This sec. with sec. 3 of the Act of 1853, ch. 245, enable a *feme covert* to acquire, in the manner there specified, the limited amount of property therein mentioned, and to hold and dispose of the same free from the control or interference of her husband.

Such property is not only exempt from liability for the husband's debts, but is, during the coverture, in no manner subject to his *marital rights;* the whole estate, legal and equitable, is vested in the wife, subject to her control and disposition, as if she were unmarried.

Though the Act of 1842 enables her to acquire and dispose of such property as a *feme sole,* yet *this Act* does not entirely remove her disability; being *covert,* she cannot sue or be sued in a *court of law,* as a *feme sole.*

But, under secs. 2 and 3 of the Act of 1853, ch. 245, she may, in reference to property held by her under sec. 8 of the Act of 1842, or in any other way vested in her, to her *sole and separate use* without a trustee, have her remedy in *a court of law* against her husband's creditors, unlawfully subjecting *said property* to pay his debts.

While, however, the Act of 1853 gives her a remedy at law in reference to such property, it does not deprive courts of equity of the jurisdiction they before had; such jurisdiction is expressly reserved by the Act, its plain design being to *enlarge,* not to restrain, the remedies of *femes covert.*

When so suing in equity, the wife should sue as sole plaintiff, by her next friend, and the husband should be made a party defendant, but the omission to make him a defendant will not, in this case, operate to reverse the decree, the objection not having been made in the court below, and the facts showing he would be a mere nominal or formal party.

All property, real and personal, belonging to a married woman at the time of her marriage, and held by her *generally,* and *not* limited to her *sole and separate use,* is, by the Act of 1853, merely protected from the debts of the husband, leaving his marital rights over it in other respects unimpaired.

The wife's remedies under the 2nd section of this Act, with reference to *such property*, is confined to cases where it is sought to be subjected to the husband's debts, and the form of the remedy must be devised with reference to her disability and the marital rights of the husband.

The legal title, in such a case, being in the husband, that title must be asserted in courts of law by him alone, or jointly with her, where, by the pre-existing law, such joinder was necessary.

She cannot sue alone or by next friend, if the husband refuses to interfere, by suit at law for her protection, but she may sue in equity, by next friend, in any matter within the recognizance of that court, and, in such case, the husband is a necessary party defendant, so that he may have the opportunity of asserting his marital rights.

Whatever appertains to the separate property of a married woman, has always been a peculiar subject of jurisdiction of courts of equity.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case, filed on the 28th of September 1855, by Catharine McKenna, a *feme covert,* in her own name, alleges that she has been for several months, with her own capital and by the credit and kindness of her own friends, in her own name, and as a *feme sole,* carrying on a grocery business in a store at the corner of North and Baltimore streets, in the city of Baltimore; that by virtue of a *fieri facias,* issued upon a judgment for $613.83, against Peter McKenna, her husband, at the suit of Bridges & Woods, the appellants, the goods, chattels, stock in trade and other matters, whereof a schedule is filed, contained in said grocery store, were taken and carried away by the sheriff of Baltimore city; that the store was thereupon closed, the business of the complainant suspended, and she deprived of the means of support; that her said husband had no interest in said stock of goods, and that the action of the sheriff is attended with great loss to her, and, unless at once relieved, her damages will be irreparable. The bill then prays for an injunction restraining Woods & Bridges, and the sheriff and his deputies, from any further action in the execution of this *fieri facias,* and from interfering with her in regaining possession of said goods and chattels, and from concealing the same from her, and for general relief.

The injunction was granted as prayed, and the appellants, in their answer, admit the issuing of the *fieri facias* and the

taking of the goods as charged in the bill, but deny that the same are the property of the complainant, and insist that they were the property of Peter McKenna, the complainant's husband. They deny that the complainant has been acting as a *feme sole,* and that the goods were bought with her means or capital, or by the aid of her friends, but allege that the whole arrangement was a scheme resorted by the husband to avoid payment of his debts. They insist that the injunction issued improvidently, that the complainant had full redress at law, and that being a married woman, she could not file a bill in her own name.

On filing their answer, the defendants moved to dissolve the injunction, and, under an order, testimony relating chiefly to the title of the husband and wife, respectively, to the property, was taken, which need not be stated. The case was then heard on the motion to dissolve, and the court, (KREBS, J.) on the 15th of July 1856, passed an order sustaining the objection to the bill, that it was brought by a married woman as complainant in her own name, but deciding that under the Act of Assembly relative to amendments in equity proceedings, this defect could be remedied by amendment, and when this was done, a final decree would be passed in the case. The complainant, thereupon, with leave granted on petition, introduced Owen McKenna as her next friend to appear for her in the cause, and afterwards, on the 29th of November 1856, the court passed a decree making the injunction perpetual. From this decree the defendants, Bridges & Wood, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Orville Horwitz* for the appellants.

As to the jurisdiction of the court: The general proposition must be conceded, that an injunction will not lie to restrain a sale where the goods of A are taken under a *fi. fa.* against B, at the instance of A. The remedy at law is perfect; replevin will get back the *very* goods; trespass will make ade-

quate compensation in damages. In order to entitle the court to interfere, there must be *some additional* equity. Either the property itself must be peculiar in its character, and such as no damages can adequately compensate for its loss, or there must be some strong reasons for the *retention* of the property *in specie*. The whole doctrine on the subject is so fully and clearly laid down in *Allen vs. Freeland, 3 Rand.,* 170, and *Bowyer vs. Creigh, Ibid.,* 25. The case of *Warnick vs. Michael,* 11 *G. & J.,* 153, is in strict conformity to the principles above indicated. In *that* case it was slave property that was about to be sold, and the allegations in the bill were, that the slaves were *"favorite servants,"* and that the complainant feared that they would be purchased by some southern trader and removed beyond "the jurisdiction." And yet, even in that case, the injunction was dissolved by the Court of Appeals, and the bill dismissed, because a clear and undisputed title, above suspicion or doubt, was not shown. The parties were left to their legal rights. It can scarcely be said, in this case, that the title is, beyond question, free from all suspicion of fraud, or, on the other hand, that the groceries were *favorite groceries,* and had about them a certain *"pretium affectionis,"* that rendered them invaluable and above compensation. What then can distinguish this from the ordinary case? One of two reasons, says the appellee: either the fact that the goods taken constituted the whole or a part of a *stock* of goods, or that the complainant is a married woman. That the place of business, as a *store,* was not interfered with, is clear. The stock taken was carried away; the furniture and fixtures were left undisturbed. *As a store* it might have been used and occupied the next day, by the appellee or any one else. There was no interruption of the store *as a store.* Does the fact that the appellee was a *feme covert* make any difference in this State? What rights do the Acts of 1842 and 1853 give to married women? The 8th sec. of the Act of 1842, is the only one that can, by possibility, be connected with the present inquiry, and it appears to me that that section was only intended to apply to money or property actually *"earned"* by the wife's "skill, industry or personal labor," to the extent of $1000,

and that that skill, &c., must be altogether independent of her husband; that when so earned she should hold it to her separate use. Has that any thing to do with the present case? Is there any thing to show that the complainant has earned one dollar? But this Act, as well as that of 1853, ch. 245, has been construed by this court in *Schindel vs. Schindel,* 12 *Md. Rep.,* 108, 294, and, according to that construction, the marital rights are not interfered with, except that the property of the wife is protected from the husband's debts. The right of possession, disposition, &c., remains with the husband as theretofore. Not only so, but *the right to recover in trespass,* for the property of the wife taken away, is expressly *ruled* in that case. The subsequent distribution of the amount of the verdict is left for the future action of the court. If, then, it be true, that the husband could sue or recover for the trespass, or could take back the goods themselves by replevin, after sale, how can it be said there is no adequate remedy at law in this State? Or if the husband and wife jointly could recover the goods, or their value in damages, at law, how can it be successfully maintained that they are remediless at law?

Now the doctrine relied on by the other side shows, that even where the property is held in trust, by the intervention of a trustee, an injunction will not be sustained unless the trustee refuses to proceed at law, (25 *Ala.,* 136.) In this State the necessity for the intervention of a trustee is expressly dispensed with by sec. 3, of the Act of 1853, ch. 345, and all remedies *at law* and in equity, for the protection of her property, secured to her. But it is insisted, that the two cases of *McCann vs. Taylor,* 10 *Md. Rep.,* 418, and *Holland vs. Mayor & C. C. of Balto.,* 11 *Md. Rep.,* 186, sustain this injunction. The first of these cases, however, proceeded on very different grounds. The allegations of the bill there charging a fraudulent intent and a desire to cast a shadow on the title to property, and that, too, by a creditor subsequent to the execution of the deed, were said to be sufficient, *in the first instance,* to warrant the issual of the injunction. In the second case, the principle decided is, that where an attempt is made to sell real property, *"under a void proceeding,"* the court will interfere.

If, in this case, it had been alleged that the judgment of the appellants was void, and that under a proceeding absolutely null an attempt was made to sell her property, there might be some similarity, although a distinction is taken in the books between the remedy by injunction as to realty and personal property. In regard to the latter, the question of title can at once be disposed of in the action of replevin or trover, or damages obtained for carrying away the goods. In regard to the former, a sale under such a proceeding would cast a cloud over the title that would remain until an ejectment might be brought by the purchaser. The cases in 1 *Md. Ch. Dec.,* 151, *Crain vs. Barnes, et al.,* and 8 *Gill,* 391, *Barnes vs. Compton,* are cases between guardian and ward, and trustee and *cestui que trust.* There can be no question as to the jurisdiction in those cases. There can be no doubt as to the jurisdiction of a court of chancery between a *feme covert* and her trustee, but the inquiry here is, as stated in the opinion of the judge in *Watkins vs. Logan,* 3 *Monroe,* 21, how far does the jurisdiction extend, as between a married woman and third parties? Now it seems that there can be no doubt as to the right of the husband, in his own name, or in an action by husband and wife jointly, to recover damages in trespass or trover for injuries to the wife's property. See 16 *Pick.,* 235, *Allen vs. Kingsbury.*

But the decree should be reversed for the additional reason, that the husband of the appellant is not a party to the proceedings, either as co-complainant or as defendant. *Story's Eq. Pl.,* secs. 61, 63. 7 *Simons,* 239, *Sigel vs. Phelps.* There being no necessity in Maryland for the intervention of a trustee, and the marital rights being undisturbed by the Act of 1853, it is *a fortiori* necessary that those rights should be protected, by compelling him to be a party to all proceedings in which the wife's property is in controversy, either as co-complainant, if their interests are the same, or as defendant, if adverse.

*Note.*—The argument on the facts that the property taken under the *fi. fa.* belonged to the husband, and not to the appellant, is omitted.

---

*Bernard Carter* and *J. M. Campbell*, for the appellee, ar-
gued :

1st. That the articles taken under the *fieri facias* were the
goods, chattels and property of the appellee, and were by her
held to her own sole and separate use, and having been ac-
quired by her partly by gift and purchase, and partly by her
own skill and industry, and personal labor, and in a trade
which she carried on in her own name, and on her own cap-
ital, were not liable for the debts of her husband, and the
seizure and carrying away of the same, on execution against
him, was illegal, inequitable and grievously oppressive. Acts
of 1842, ch. 293, sec. 8, and 1853, ch. 245.

2nd. The remedy by bill in equity and injunction, is the
proper one under the circumstances of this case, because: 1st.
The Acts complained of threatened an entire destruction of the
business, occupation and trade of the appellee, and, therefore,
if considered as a mere trespass, constituted a proper case for
an injunction. 1 *Md. Rep.*, 525, *White vs. Flannigain.*
4 *Md. Rep.*, 98, *Green vs. Keen.* 7 *Md. Rep.*, 408, *Ship-
ley vs. Ritter.* 2nd. A court of equity has jurisdiction to re-
strain by injunction, sales, where they are inequitable, or may
operate as a fraud on the rights and interests of third parties.
10 *Md. Rep.*, 418, *McCann vs. Taylor.* 11 *Md. Rep.*, 186,
*Holland vs. Mayor & C. C. of Balto.* 2 *Story's Eq.*, secs. 954,
1387. 4 *Gill*, 48, *Dilley vs. Shipley, et al.* 2 *Rhode Island
Rep.*, 67, *Kenyon vs. Clarke.* 2 *Ohio*, 505, *Dudley, et al., vs.
Little.* 3d. On a bill filed by a married woman by a next friend,
a court of equity will restrain, by injunction, the seizure and
sale of her separate property, real or personal, on execution
against her husband at suit of his creditors. 25 *Ala.*, 136,
*Bridges vs. Phillips.* *Ibid.*, 212, *Crabb vs. Thomas.* 3 *Ala.*,
498, *Calhoun vs. Cozens.* 9 *Paige*, 363, *Shirley vs. Shir-
ley.* 4th. Whatever appertains to a married woman's separate
estate, is peculiarly the subject of equity jurisdiction. 2 *Sto-
ry's Eq.*, secs. 1367, 1387. 23 *Miss.*, 236, *Mitchell vs. Otey.*
4 *Mylne & Craig*, 408, *Newlands vs. Paynter.* 19 *Verm.*,
410, *Porter vs. Bank of Rutland.* 5th. The appellee had no
adequate redress for her grievance at common law. Being a

married woman, she could maintain, in that tribunal, no ac-
tion in her own name, and her property, taken under the *fi.
fa.* in this cause, not having been held by a trustee for her,
her only remedy was by a bill in equity. 2 *Story's Eq.*, sec.
1387. 2 *Kent*, 164. 1 *Chitty on Pl.*, 28, 29, 31. 11 *East.*,
301, *Bogget vs. Frier, et al.* 2 *Bos. & Pull.*, 93, *Beard &
wife vs. Webb, et al.* 19 *Ala.*, 618, *Jordan vs. Gray.* The
Act of 1842, ch. 293, does not give the wife a remedy at law
for the separate property which it authorizes her to hold and
enjoy, and the 8th sec. of that Act was not adjudicated upon
in the cases of *Schindel vs. Schindel,* cited by the appellants.
6th. The Act of 1853, ch. 245, gives no adequate remedy to
the appellee at law. But even if it did, this would not de-
stroy the jurisdiction already existing in equity, which is ex-
pressly reserved by that Act. 1 *Story's Eq., sec.* 64. 1 *Md.,
Ch. Dec.,* 151, *Crain, et al., vs. Barnes, et al.,* affirmed in
8 *Gill,* 391; 23 *Miss.,* 236, *Mitchell vs. Otey, et al.*

Bartol, J., delivered the opinion of this court.

An examination of the facts of this case, as disclosed by the
proof, has satisfied us, that the goods and chattels seized and taken
under the writ of *fieri facias* were the property of the complain-
ant, Catharine, held by her to her sole and separate use, under
the provisions of the 8th section of the Act of 1842, ch. 293.

The execution was issued at the suit of the appellants to
recover a debt due them from Peter McKenna, the husband
of the complainant. The right of property in the wife being, in
our opinion, clearly established by the evidence, the only ques-
tion for us to consider is, whether she is entitled to relief against
the execution by proceeding in a court of equity?

The 8th section of the Act of 1842, declares, that the prop-
erty acquired by a married woman, in the mode specified, to
the value of one thousand dollars or less, with the fruits, in-
crease and profits thereof, *"shall be held by her, to her sole
and separate use, with power, as a feme sole, to invest and
re-invest, and sell and dispose of the same."*

The 3rd section of the Act of 1853, ch. 245, provides, "that
it shall not hereafter be necessary to interpose a trustee, in or-

34      v. 14,

der to secure to a married woman the sole and separate use of her property."

There can be no difficulty in construing these sections; their plain purpose and intention were to relieve the disability which was imposed by the common law upon a married woman, and to enable her to acquire, by her skill, industry and personal labor, a limited amount of property, and to hold and dispose of the same free from the control or interference of her husband. Such property is not only exempt from liability for his debts, but it is, during the coverture, in no manner subject to his marital rights. He is not her trustee; no trustee is necessary, as at the common law, for the purpose of supporting the separate use. The whole estate, legal and equitable, is vested in her, subject to her control and disposition, as if she were unmarried. This is not in conflict with the decision of this court in the case of *Schindel vs. Schindel*, 12 *Md. Rep.*, 294, cited and relied upon by the appellants as establishing a different construction of these Acts of Assembly.

An examination of the opinion of the court pronounced in that case will show, that the Reporter, in making his synopsis of the decision, has not stated the points ruled by the court, with his usual precision and accuracy. The construction of the 8th section of the Act of 1842, was not involved in that case. It was a controversy between the husband and wife; the property in dispute was not held to her sole and separate use, but was the real and personal estate belonging to her while sole, which she claimed to hold, after marriage, exclusively as her own, exempt from the marital rights of her husband, by virtue of the provisions of the Constitution and of the Act of 1853, and the whole extent of the court's decision was, that such property was, under the Act of 1853, exempt from the debts of the husband, his marital rights over it, in other respects, remaining unimpaired. That decision has no application here. As we have seen, the title of Catharine McKenna, the complainant, to the property taken in execution, arises under the 8th section of the Act of 1842, which, in express terms, entitles her to hold it to *her sole and separate use*. While that section provides a remedy for her creditors,

by proceeding in the nature of attachment against her property, it is silent as to the mode by which her rights over it are to be protected and enforced in a court of justice. In this respect she is left, by the Act of 1842, to her ancient remedies. The statute enables her to acquire and dispose of certain property as a *feme sole,* but does not entirely remove her disability. Being *covert* she cannot sue or be sued in a court of law as a *feme sole.* See 2 *Story's Eq.,* sec. 1367. Her position is not unlike that of a *feme covert* sole trader under the custom of London, and in *Beard vs. Webb,* 2 *Bos. & Pull.,* 93, it was held that such sole trader could not sue or be sued alone at law.

Whatever appertains to the separate property of a married woman has always been a peculiar subject of jurisdiction of courts of equity. In 2 *Story's Eq., secs.* 1385, 1386, the learned author, after speaking of the rights and liabilities of a wife, under an agreement with her husband, made before or after marriage, whereby she is authorized to carry on trade on her sole account, says in sec. 1387: "We here perceive that the law will give effect to such agreements, only when those forms have been observed which will vest the property in parties capable of enforcing the proper rights of the wife in legal tribunals, as is the case where the property is vested in trustees, for her sole use and benefit, in order to enable her to carry on trade. But courts of equity will go further, and if there is any such agreement, before marriage, resting in articles and without trustees, by which she is permitted to carry on business, on her sole and separate account, or, if without such ante-nuptial agreement, the husband should permit her, after marriage, to carry on business, on her sole and separate account, all that she earns in trade will be deemed to be her separate property, and disposable by her as such, subject however to the claims of third persons properly affecting it. In the former case, the earnings will, in equity, be supported for her separate use, against her husband and his creditors; in the latter, against him only, unless the permission, after marriage, arises from a valuable consideration." What might have been done by ante-nuptial contract, the Act of

1842 was designed more effectually to accomplish, and we perceive no sound reason why a court of equity may not support and protect the separate use of the complainant against the creditors of her husband.

In the case of *Bridges & Co. vs. Phillips*, 25 *Ala.*, 136, and in *Crabb's Adm'r, vs. Thomas, Ibid.*, 212, it was held that "a married woman may come into equity, suing by her next friend, to protect her separate property from levy and sale under execution against her husband." In the former case, the equitable relief was granted upon the ground that her trustee refused to interpose a claim at law, and in the latter, *because she had no trustee to protect her interest at law;* and, in each case, we think the ruling of the court was consistent with reason and authority. See, also, 9 *Paige*, 363, *Shirley vs. Shirley*. In deciding that the complainant is entitled to the relief prayed by her bill, we do not mean, in any manner, to impugn the doctrines so ably announced in the cases cited from 3 *Randolph*, 25 and 170, and which have been repeatedly recognized by this court. But the jurisdiction of courts of equity to interpose for the protection of the separate property of a married woman, from the execution of her husband's creditors, has always been asserted on the ground that, by reason of her disability, she had not a complete and adequate remedy at law.

It has been argued that under the 2nd section of the Act of 1853, ch. 245, the complainant may have complete redress in a court of law, and, therefore, a court of equity ought not to interfere. That section provides, "that, in order to effect the objects of the foregoing section, the wife shall have the benefit of all such remedies, for her relief and security, as now exist, or may be devised in the courts of law or equity of this State."

The object of the first section is to exempt the wife's property from liability for the husband's debts. It comprehends all property, real and personal, belonging to a woman at the time of her marriage, and all property acquired or received by her after marriage in any of the modes prescribed in the Act. Its language is comprehensive enough to embrace, as well property held by her generally and not limited to her sole and

separate use, as all property held by her to her sole and separate use, whether acquired under the 8th section of the Act of 1842, or by any other mode.

As to property of the former class, we have said it is merely protected from the debts of the husband, leaving his marital rights over it, in other respects, unimpaired. It follows, therefore, that, under the second section, the remedies for her relief and security, with reference to such property, must be confined to cases where it is sought to be subjected to the payment of her husband's debts, and that the form and manner of the remedy must be devised with reference to her legal disability and the marital rights of her husband. The legal title being in him, that title must be asserted in courts of law by him, either alone, or jointly with her, where, by the pre-existing law, such joinder was necessary. She cannot sue at law, alone or by next friend, if the husband refuses to interpose, by suit at law, for her protection. She may sue in equity, by next friend, in any matter properly within the cognizance of such court, and the husband, in such case, would be a necessary party defendant, so that he may have an opportunity of asserting his marital rights.

With reference to property held by the wife under the 8th section of the Act of 1842, or in any other way vested in her, to her sole and separate use, without any trustee, we consider her condition and rights materially altered by the Acts of Assembly to which we have referred.

At the common law, wherever property was so limited to a married woman, as courts of law could notice only the legal title, they could take no cognizance of such separate use, and, in courts of equity, it was supported by treating the husband as her trustee.

By the 3rd section of the Act of 1853, as we have before said, *no trustee is necessary*, and she may hold both the legal and equitable title, and, under the 2nd section, she may have her remedy, in a court of law, *as a feme sole*, against the creditors of her husband unlawfully subjecting to the payment of his debts her sole and separate property.

And, in the case before us, the complainant, Catharine,

might resort to her action at law. But the conclusion which the appellant's counsel draws from this construction of the Act of 1853, by no means follows. The Act gives her a remedy at law, but does not deprive the court of equity of the jurisdiction which it before had. That is expressly reserved by the Act, its plain design being to enlarge, not to restrain, the remedies of *femes covert.* See 1 *Md. Ch. Dec.,* 151, 154. 8 *Gill,* 391.

The only remaining objection to the decree below, urged by the appellant's counsel in his argument, is, that the husband, *Peter McKenna,* is not a party to the proceedings, either as co-plaintiff or as defendant. The rule on this subject is plainly stated in the 63*rd sec.* of *Story's Eq. Pl.,* relied upon by the appellants. It is there said, "she ought to sue as sole plaintiff, by her next friend, and the husband should be made a party defendant, for he may contest that it is her separate property, and the claim may be incompatible with his marital rights."

This objection was not made by the respondents in the court below. The bill was originally filed by Catharine, in her own name. The objection was made in the answer that, being *covert,* she could not sue in her own name. The Circuit court thereupon ordered the bill to be so amended as that the complainant might sue by her next friend, and the amendment was made. However proper it would have been, according to the established rules of practice, to make the husband a party defendant in the cause, we think the decree ought not to be reversed by reason of such an objection, urged, for the first time, in the appellate court. The proceedings clearly show that, in this case, he would be a mere nominal or formal party, and the "non-joinder of such party will often be dispensed with, if entire justice can be done without him." *Story's Eq. Pl.,* sec. 229. See, also, *secs.* 221, 542. 2 *Gill,* 319.

*Decree affirmed with costs.*

(Decided July 15th, 1859.)