( Decided July 12th, 1865.)

---

JAMES McCREERY *vs.* GEORGE A. SUTHERLAND.

INJUNCTION: RELIEF IN EQUITY: EXECUTION.—Where the Bill of Complaint alleges, that the property which the defendant is about to seize and sell under an execution against third persons, belongs, *bona fide*, to the complainant, and constitutes his stock-in-trade and merchandize. And that the consequence of permitting them to be seized and sold, would utterly destroy his trade, credit and business as a merchant, and deprive him of the means of support:—HELD,

That there are elements of apprehended damage and injury alleged in this Bill, for which the law does not afford an adequate and sufficient remedy, either by action or trespass, or by replevin; and such as furnish a proper ground for an injunction.

APPEAL from the Circuit Court of Baltimore city:

This appeal is taken from an order of the Circuit Court for Baltimore city, granting an injunction to stay the taking of a stock of goods of Sutherland, under writs of *fieri*

*facias,* which had been issued on a judgment recovered by McCreery against Wroth & Fullerton, and on another judgment recovered, by the Union Bank of Maryland, against the same defendants.

The bill states, that at the time of the filing thereof, the complainant was, and for more than a year prior to that time had been, engaged in business in the city of Baltimore, as a retail dry-goods merchant on his own account, in good credit, and with a fair and increasing share of success, and was engaged in his sales as usual, when he was interrupted therein by a levy made on his whole stock of merchandise, of the value, at the least, of $20,000, by the sheriff of Baltimore city, who seized and took possession thereof, under color of the writs of *fieri facias* before mentioned—the said sheriff so taking the said stock as and for the property of the said Wroth & Fullerton; that the said Wroth & Fullerton had not any interest whatever, directly or indirectly, in the property so seized and levied upon, or any part thereof; that the complainant, in the prosecution of his business, had so conducted himself as to secure to himself a very considerable custom, which was increasing, and bade fair to establish him in a large and increasing trade; that for the purposes of his trade, and to meet the demands of the then business season, he had purchased in New York and elsewhere, a very considerable stock, a part whereof was bought on credit, and remained unpaid for; that his means of payment for said goods were dependent on his receipts from sales thereof; that the removal and sale of his said stock of goods, under color of said executions, would deprive him of all the means and resources upon which he so depends, and would not only reduce him to insolvency, but his prospects for life as a young man must be irretrievably blasted, and his credit ruined beyond hope;—that no compensation which a Court of Law could give in the way of damages for the trespass, could afford him adequate relief;—and that even if this were otherwise, the said sheriff has no sufficient means to respond, in damages even, for the

taking of so large an amount of property, and that Mc-Creery, the plaintiff to one of said executions, is a non-resident.

The Court passed an order granting an injunction as prayed, and from this order the present appeal is taken.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*P. McLaughlin*, for the appellant:

The question, and the only question is, whether, in this case, an injunction should issue to restrain the execution of the writ of *fi. fa.* It has been supposed that this was not an open question anywhere, where the common law of England has been adopted, but particularly in Maryland, after the decision in the cases of *Lewis vs. Levy*, 16 *Md. Rep.*, 85; and, *Freeland vs. Reynolds*, 16 *Md. Rep.*, 416. If this is still to be considered an open question in this Court, we beg to refer to the following cases, viz: *Chappel vs. Cox*, 18 *Md. Rep.*, 513, 519. *Pusey vs. Pusey*, 1 *Vernon*, 273. *Hamilton vs. Ely*, 4 *Gill*, 34. *Bowyer vs. Creigh*, 3 *Rand.*, 25. *Allen vs. Freeland, Id.*, 70. *Blondheim vs. Moore*, 11 *Md. Rep.*, 365. *Green vs. Keen*, 4 *Md. Rep.*, 98, 105, 106. *White vs. Flannigan*, 1 *Md. Rep.*, 525, 542.

*Thos. S. Alexander* and *S. T. Wallis*, for the appellee:

The injunction is not asked simply to stay the levy of an execution on goods, which the plaintiff to the execution claims to belong to his debtors, on the allegation that those goods really belong to the complainant. But it is likewise averred that those goods have a peculiar value, as forming a stock in trade, and that the sale thereof will have the further effect of destroying the trade of the complainant, and by destroying his credit, will materially impair his means of subsistence. The equity alleged is, therefore, in brief, *irreparable damage*, and it is submitted that where irreparable damage is impending, equity will interfere as

freely for the protection of personal estate as of real estate. *McCann vs. Taylor*, 10 *Md. Rep.*, 419, is a direct authority that equity will stay a sale of real estate on a bill stating a *prima facie* case against the judgment creditor, and that the sale would be attended with irreparable damage.

The conclusion is irresistible, that the same protection would be afforded to the possessor of personal property where irreparable damage would be the consequence of enforcing the execution. *Warnick vs. Michael*, 11 *G. & J.*, 153, was a case where negroes had been taken in execution, and the injunction was dissolved, expressly on the ground that a title "above suspicion or doubt in relation to its fairness was not made out," and the counsel for the appellant conceded that equity might interpose for the protection of a fair title, where the plaintiff could show that his remedy at law was not adequate. In both cases the plaintiff derived title under the debtor to the execution, and in one case it was expressly averred, and in the other implicitly conceded, that the creditor denied the validity of such derivative title.

In the present case it is charged that a very considerable part of the stock of goods taken in execution had been purchased by the complainant, from time to time, in the city of New York, and that a part of such purchases had been effected on his personal credit, and there is nothing from which it can be inferred that Wroth & Fullerton ever had possession of or claimed title to any part of the stock. And whilst on the one hand the plaintiff shows ownership "clear and undisputed," so, on the other, he shows that a sale of his stock under execution would not only be made at an under value, but likely utterly destroy his trade, and reduce him to a state of insolvency. That he could not recover damages adequate as a compensation for such wrongs must be apparent. *Pacific Insurance Co. vs. Conard*, 1 *Bald. C. C.*, 142. *Cromwell, et al., vs. Owens*, 7 *H. & J.*, 60.

*Lewis vs. Levy*, 16 *Md. Rep.*, 86, and *Freeland vs. Reynolds, Id.*, 416, relied on by the counsel of the appellant,

are cases of execution against a mortgagor in possession. In each case the plaintiff's title was impeached. In the first, the injunction was dissolved, expressly on the ground that "the bill does not show that the property was of such a character, or possessed such peculiar value or interest to the owner, that he could not be adequately compensated by damages at law;" and, in the latter case, it was declared that the remedy of the appellants was "adequate and complete at law."

Those cases show, that although the case of *Bridges vs. McKenna*, 14 *Md. Rep.*, 258, was decided on the ground that the plaintiff was a *feme covert*, it was not intended to deny the right of any other person to protection, who could show that the injury threatened could not be compensated for in damages. 3 *Rand.*, 25, and *Id.*, 170, *ubi supra*.

In *Chappell vs. Cox*, 18 *Md. Rep.*, 513, it was held, that "the mere apprehension of injury, arising from the intermixture of the debtor's goods with those claimed by the plaintiff, and to which intermixture he tacitly consented," was not sufficient to sustain an injunction. But it was assumed, that if the officer making the levy was not abundantly able to meet the responsibility resulting from the levy on the property claimed by the plaintiff, his remedy at law could not be deemed adequate. In the present case, we alleged the insufficiency of the sheriff, and the non-residence of McCreery. We refer to 2 *Story's Eq.*, sec. 926, for the general rule, that an injunction will issue to prevent a wrong which threatens loss of health, or of trade, or destruction of the means of subsistence. In *Hamilton vs. Whitridge*, 11 *Md. Rep.*, 128, an injunction was granted to prevent the opening of a bawdy-house in proximity to the plaintiffs, on the ground of discomfort to them, and diminution in value of their property. In *Gilbert vs. Mickle*, 4 *Sandf. Ch.*, 358, it was held, that obstruction to one's lawful business is a nuisance, which may be restrained by injunction. See, also, *Barber vs. Barber*, 21 *How.*, 591. *Gue vs. The Tide-Water Canal Co.*, 24 *How.*, 257. *Parker vs. Winnipiseogee*

*Lake Co.*, 2 *Black.*, 545. *Osborn vs. Bank U. S.*, 9 *Wheat.*, 841. *Arundel vs. Phipps*, 10 *Ves.*, 130. *Wood vs. Bowcliffe*, 3 *Hare*, 308.

BOWIE, C. J., delivered the following dissenting opinion:

We cannot affirm the order granting the injunction in this case, without departing from the best established principles and precedents. Mere *trespass* is not a ground for the interposition of a Court of Equity, even in cases of real estate; much less where the subject matter is personal property, of no peculiar character or value. *Story's Eq.*, vol. 2, sec. 928. *Amelung vs. Seekamp*, 9 *G. & J.*, 468. *Hamilton vs. Ely*, 4 *Gill*, 37, 38. *Shipley vs. Ritter*, 7 *Md. Rep.*, 413.

The language of this Court, in *Lewis, et al., vs. Levy*, 16 *Md. Rep.*, 90, is literally applicable to the bill before us. The learned Judge who delivered the opinion of the Court in that case, thus expressed himself: "There is nothing here which distinguishes the case from many others, in which it has been held an injunction will not lie. The complainant claiming goods in a store, on which the appellants levied an execution against a third party, under whom the complainant asserts title, seeks the restraining process of equity to prevent their being sold under that writ. The bill does not show that the property was of such a character or possessed such peculiar value or interest to the owner that he could not be adequately compensated by damages at law. If this injunction can be maintained, we can scarcely imagine a case where the execution of a judgment at law could not be prevented, and plaintiffs altogether frustrated in the recovery of just demands, even when asserted in the most solemn form."

In the case before us, the complainant shows nothing which gives peculiar value to the stock of goods which he charges has been illegally seized, at the instance of the defendants. The injuries which he alleges will ensue if they are removed, are *"insolvency," "prospects irretrievably blast-*

McCreery *vs.* Sutherland.

*ed for life,"* and *"credit ruined beyond hope."* These consequences, though much to be deplored if realized, are not the necessary consequences of the seizure and sale of such property; in contemplation of law, the injury resulting from the seizure and sale, may be measured and compensated by adequate damages.

In *Beall vs. Brown,* 7 *Md. Rep.,* 393, non-residence of a plaintiff, against whom the defendant had a cross-action at law, upon a warranty growing out of the same transaction, was held not sufficient of itself to give a Court of Equity jurisdiction to restrain by injunction the execution of the plaintiff's judgment. A large proportion of the cases in which the Courts of Equity have interposed to prevent irreparable injury, are those of real estate, and then only where the character and nature of the injury is clearly shown to be such as pecuniary compensation could not repair. Mere apprehension of injury is not sufficient.

From the mercantile character of personal property, its universal and intimate connection with all the operations of trade, if every injury which involves its value is to be prevented by injunction, upon the allegation of irreparable injury to the possessor, the traffic and commerce of the country would be seriously obstructed. All executions in which the right of property was doubtful, would be drawn into Chancery. Questions of right between man and man, would be withdrawn from the tribunals of law, trials by jury and *viva voce* examination of witnesses would be superseded by the more dilatory and circuitous examination upon interrogatories, and decrees rendered upon evidence upon paper, by Judges ignorant of the moral weight of the testimony.

The appellee insists the injunction is not asked simply to stay the levy of an execution on goods which the plaintiffs to the execution claims to belong to his debtors, on the allegation that these goods really belong to the complainant, but it is likewise averred those goods have a *peculiar value,* as *forming a stock in trade,* and that the sale thereof will have the further effect of destroying the trade of the com-

plainant, and thus inflict irreparable damage, and it is sub-
mitted that where such damage is impending, equity will
interfere as freely for the protection of personal estate as of
real estate.

In all the elementary writers, and most of the adjudged
cases, as before intimated, where injunctions for the protec-
tion of personal property against seizure and sale are treat-
ed of, it is laid down as an essential prerequisite to the in-
junction to show the subject matter of the trespass had
some special and peculiar value, which could not be repre-
sented and secured by money.   Lord ELDON, in the case of
Lady Arundell vs. Phipps & Taenton, after alluding to the
character of the trust under which the complainant claimed,
said: "Another ground upon which Lady Arundell is en-
titled to relief here is, that from the very nature of the pro-
perty in question, the quality and nature of the property
alleged to be purchased, the purpose and object of the pur-
chase, it is quite impossible for her to have the benefit of
it, if a bona fide transaction, unless she can specifically en-
joy it, and this Court having in many instances interposed
to protect the enjoyment of a specific chattel, the question
is, whether the very object and subject of the contract do
not make it necessary to consider whether the Court cannot
give the specific relief of fixing in the trustees the very
property, instead of the amount in damages."   10 Ves.,
147.

This Court, in Bridges vs. McKenna, 14 Md. Rep., 268,
after establishing the right of the complainant, as a feme
covert, to invoke the extraordinary interposition of a Court
of Equity for the protection of her separate personal estate,
acquired under the Act of 1842, by way of caution, re-
marks: "In deciding that the complainant is entitled to
the relief prayed by her bill, we do not mean in any man-
ner to impugn the doctrines so ably announced in the cases
cited from 3 Randolph, 25 and 170, and which have been
repeatedly recognized by this Court."   Again, in Freeland
vs. Hall, decided by this Court in 1860, which was an ap-

plication for an injunction to stay the sale of certain goods seized by a sheriff under an execution against third persons, the Court refused the injunction, relying upon *Lewis, et al., vs. Levy*, 16 *Md. Rep*, 85, *Bridges vs. McKenna*, 14 *Md. Rep.*, 258, and 3 *Randolph*, 25 and 170.

The first of the cases in *Randolph, Bowyer vs. Creigh*, contains an epitome of the principles of equity, in the exercise of jurisdiction by injunction, admirably condensed, and exposes the evils ensuing from too facile an interference with executions, where the complainant has an adequate remedy in damages at law. The learned Judge declar : "This interference of equity has grown to be a crying ev among us, and ought to be corrected with a firm and stead hand." After reviewing the authorities, he concludes, "As I understand it, they authorized the interference of equity *in no case* where the plaintiff claims as an incumbrancer merely; and when he claims as owner, only in those cases where, from the peculiar nature of the property and circumstances of the case, the remedy at law is incomplete." 3 *Rand.*, 31, 32.

In the second of the cases referred to, *Allen vs. Freeland*, it was held, that slaves taken under execution and claimed by a third person, could not be protected from sale by injunction, unless it was shown that they possessed some peculiar value which could not be compensated in damages. These conclusions are virtually incorporated into our own decisions, by frequent adoption and approval in the cases before cited. If merchandize in a store can be invested with such peculiar character as would exempt it from seizure and sale, because it had been in the possession of the complainant, and he had thus acquired credit and established a custom, every man in trade would be entitled, upon the same ground, to an injunction, who would swear that putting in an execution would work irreparable mischief to him. The standard is not mischief to the man so much as loss of the thing, which cannot be restored by money. Thus the "Silver Altar," and the "Ancient Horn," and

the "Family Portraits," were objects which money could not replace. But a stock of merchandize in a store, or the good will acquired by twelve months' trade, do not come within the category of things which should be protected by injunction, because the party injured is without adequate and complete remedy at law.

The general rule laid down by *Story,* that a Court of Equity will interpose to prevent irreparable injury from loss of trade, is not supported by reference to any case similar to the present, but such as fraudulent simulation of articles of manufacture, or assumption of a style or firm already established. The industry and experience of the appellees' counsel have not enabled them to produce a parrallel case. *Hyde vs. Ellery,* 18 *Md. Rep.,* 500, 501. The last reported case in this Court, in which an injunction to stay the sale of goods was sustained, was based upon a charge of combination and fraud on the part of the defendants, on which ground this Court mainly relied.

BARTOL, J., delivered the opinion of this Court:

A majority of the Court agree with the Chief Justice in most of the views expressed in his opinion in this case. But an examination of the previous adjudications by this Court, to which he has referred, and a consideration of the general principles upon which the jurisdiction of Courts of Equity in such cases depends, have brought us to the conclusion, that upon the allegations in the bill before us, the injunction was properly issued. Such applications are always addressed to the sound discretion of the Court, and every case must depend upon the particular facts and circumstances belonging to it, and alleged on the face of the bill.

The case of *Woods & Bridges vs. McKenna,* rested upon the well established jurisdiction of Courts of Chancery over the separate property of *feme coverts,* and did not involve any decision of the question upon the jurisdiction of the Court, or upon the right of the complainant to maintain

the bill for injunction, if she had been *sui juris*. The cases of *Lewis vs. Levy* and *Freeland vs. Reynolds*, 16 *Md. Rep.*, 85 and 417, were both of them instituted by parties claiming title as grantees under bills of sale or mortgages of personal chattels, not being in possession; and claiming the interference of the Court by way of injunction, to protect the same from seizure and sale under execution. This Court held, that the injunction ought not to be issued; and the grounds and reasons upon which those cases rest, are too firmly established now to be shaken.

But, in our opinion, the case now before us is clearly distinguishable from those. Here, the bill of complaint alleges that the property which the appellant is about to seize and sell under his execution against Worth nd Fullerton, belongs *bona fide* to the complainant, and constitutes his stock in trade and merchandize; and that the consequence of permitting them to be seized and sold, would utterly destroy his trade, credit and business as a merchant, and deprive him of the means of support.

It is said that the injunction ought to be refused, because the complainant has full and complete remedy at law. If this were so, we agree that a Court of Equity would have no jurisdiction to grant relief in the case. But, to our mind, it appears that there are elements of apprehended damage and injury alleged in this bill, not presented in the cases of *Lewis vs. Levy*, and *Freeland vs. Reynolds*, and for which the law does not afford adequate and sufficient remedy, either by action of trespass, or by replevin. This last remedy would be utterly inadequate, and would require such a multiplicity of suits as would leave the injured party without remedy.

In our opinion, the recent case of *Hyde, et al., vs. Ellery, et al.*, 18 *Md. Rep.*, 496, in which this Court sustained the injunction, was more analogous to the present. There the injunction was granted as ancillary to the general relief prayed. But the question before us, was upon the right of the complainant to the injunction; and we think the prin-

ciples upon which that case was determined, ought to govern this; and being of opinion that there was no error in granting this injunction, the order appealed from will be affirmed, and the cause remanded.

( Decided July 12th, 1865.)